IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH RAY ANDREWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-21-609-R |
| ) | |
| OKLAHOMA WORKERS' ) | |
| COMPENSATION COMMISSION, ) | |
| an agency of the State of Oklahoma; ) | |
| HOPPER SMITH, individually and in his ) | |
| official capacity; ANDREA DELLING, ) | |
| individually and in her official capacity; ) | |
| and MARK LIOTTA, individually and in ) | |
| his official capacity, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is the Amended Motion to Dismiss filed by Defendants Oklahoma Workers' Compensation Commission (OWCC), Hopper Smith, Andrea Delling, and Mark Liotta pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Doc. No. 11). Plaintiff responded in opposition to the motion and Defendants filed a reply in support of their position. (Doc. Nos. 16 and 17). Upon consideration of the parties' submissions, the Court finds as follows.

## Background

Plaintiff alleges he was employed by OWCC from February 1, 2014, until August 16, 2019. Doc. 5, ¶ 21. From August 2015 until March 2019, he served as OWCC's Compliance Director. *Id.* ¶¶ 24, 28. In that capacity Plaintiff advised administrators and other state officials of the need to enforce cease-and-desist orders against employers who failed to obtain the requisite workers' compensation insurance. *Id.* ¶ 24. Plaintiff learned

the Commission was understating collection numbers in reports to the Oklahoma Legislature which created fictitious budget problems. *Id.* ¶25. Plaintiff alleges that he spoke with Bob Burke, an attorney for a watchdog group regarding Oklahoma workers' compensation laws, although he does not identify the content of their conversation or the capacity in which he spoke with Mr. Burke. *Id.* ¶ 26. He alleges, however, that shortly thereafter a member of legislative leadership, Jon Echols, requested that the Commission provide him with the compliance data from 2014 through 2019. *Id.* ¶ 27.

On March 4, 2019, Defendant Liotta, chair of the Commission, informed Plaintiff that OWCC was demoting him from Compliance Director to Investigator, although his pay was not reduced. *Id.* ¶ 28. Liotta advised Plaintiff he would still be classified as a supervisor but would not be assigned any employees to supervise. *Id.* ¶ 29. Following Plaintiff's demotion, Defendant Smith, the Executive Director of the Commission, served as interim Compliance Director until OWCC hired Plaintiff's replacement. *Id.* ¶ 30.

Shortly after being demoted, Plaintiff provided the requested workers' compensation compliance data to Attorney Burke, who provided the information to Representative Echols. *Id.* ¶ 31. On April 29, 2019, Plaintiff conveyed to Representative Zack Taylor his concerns that OWCC was struggling to meet its enforcement goals regarding employer compliance. *Id.* ¶¶ 32–33. Plaintiff informed Representative Taylor that he had expressed concerns to Chair Liotta, but that Liotta did not want the Legislature or the public to be concerned about these issues. *Id.* Plaintiff also complained to Representative Taylor about the lack of funding and staffing at OWCC. *Id.* ¶ 34.

Plaintiff's then attorney sent a letter to Defendant Smith, initiating a formal grievance against his demotion to the Investigator position. *Id.* ¶ 35. The letter also advised Smith that Plaintiff suffered from serious health conditions and wished to take leave under the Family Medical Leave Act (FMLA). *Id.* Although Smith never responded to the letter [*Id.* ¶ 36], Defendant Delling, OWCC's Chief Financial Officer and the Agency Human Resources Representative, responded. *Id.* ¶ 37. Delling asked Plaintiff if he intended to resign his position. *Id.* ¶ 38. She advised Plaintiff on May 15, 2019, that his request for FMLA leave had been granted, covering the period from April 16 through May 27, 2019. *Id.* ¶ 39. At the request of Plaintiff's counsel, Delling extended the leave until July 11, 2019. *Id.* ¶ 40. In early July 2019, Plaintiff's attorney advised Defendant Delling that Plaintiff remained unable to work, but that he intended to use his accrued sick leave to cover the additional time off he required.[1] *Id.* ¶¶ 45, 50. On August 9, 2019, Defendant Delling advised Plaintiff's counsel that Mr. Andrews' treating physician had not responded to her numerous inquiries about when Plaintiff could be expected to return. Plaintiff alleges he informed Defendant Delling that he had a procedure scheduled for August 13, 2019, and intended to return to work on September 1, 2019. *Id.* ¶¶ 42, 45. He additionally informed her that he planned to use his personal sick leave to cover the time that the FMLA leave could not. *Id.* ¶¶ 45, 50.

On August 15, 2019, Plaintiff contacted the Oklahoma Public Employees Retirement System to inquire about steps he needed to take to retire from the Commission.

---

[1] Plaintiff's physician advised Defendant Dellling that Plaintiff was still under his care and that he had additional testing scheduled for August 2019.

*Id.* ¶ 46. The next day Defendant Delling advised Plaintiff via email that he was terminated, and the letter did not provide a cause for termination. *Id.* ¶ 47.

In response, on November 21, 2019, Plaintiff filed an intake form with the Equal Employment Opportunity Commission (EEOC). Doc. No. 16-1 at 18. The EEOC sent OWCC a Notice of Charge of Discrimination on December 4, 2019 [*Id.* at 13], issued a formal charge of discrimination to Plaintiff on March 9, 2020 [Doc. No. 5, ¶ 13], and sent Plaintiff his Notice of Right to Sue on September 22, 2020 *Id.* ¶ 18. Plaintiff thereafter initiated this action alleging violations of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the FMLA, the Rehabilitation Act, the Oklahoma Anti-Discrimination Act (OADA), state law tort claims, and a First Amendment Claim under 42 U.S.C. § 1983. Doc. No. 5. Defendants seek dismissal of all claims except those arising under the Rehabilitation Act.

## **Standard of Review**

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must determine whether a plaintiff has stated a claim upon which relief may be granted. The Court grants the Motion when the Complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must contain enough "facts to state a claim to relief that is plausible on its face" [*id*. at 570], and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555 (citations omitted). The Court must accept all the well-pled allegations of the Complaint as true and must construe the allegations in the light most favorable to Plaintiff. *Id*.; *Alvarado v. KOB–TV, L.L.C.*, 493

F.3d 1210, 1215 (10th Cir. 2007). However, the Court does not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). When Motion to Dismiss under Rule 12(b)(1) "standards apply, the [C]ourt notes that . . . the non-movant enjoys similar safeguards; the allegations of the complaint should be construed favorably to the pleader and the [C]ourt will not look beyond the face of the complaint to determine jurisdiction." *Thomas v. Metropolitan Life Ins. Co.*, 540 F. Supp. 2d 1212, 1217 (W.D. Okla. 2008) (citations omitted).

## ADA and ADEA Claims

OWCC first seeks dismissal of Plaintiff's ADA and ADEA claims, arguing that as an agency of the State it is entitled to sovereign immunity. Doc. No. 11 at 13–15. The Commission concedes that by virtue of removal of this action from state court it has waived its immunity from being sued in this federal forum. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002); *Estes v. Wyoming Dept. of Transp.*, 302 F.3d 1200 (10th Cir. 2002) (state department of transportation's removal to federal court constituted a waiver of sovereign immunity) (citing *Lapides*). However, OWCC argues that the State has not waived its immunity from liability by consenting to appear in a federal court. *See Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014) ("A state enjoys another kind of sovereign immunity besides immunity from suit that it may invoke even after agreeing to removal—immunity from liability."). Instead, it retains immunity from liability because

5

Congress did not validly abrogate the sovereign immunity of the States in enacting Title I of the ADA or the ADEA. *See Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001) (holding Congress did not properly abrogate state sovereign immunity when it passed the ADA); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding Congress did not properly abrogate state sovereign immunity when it passed the ADEA).

Sovereign immunity encompasses two separate but related concepts: immunity from suit and immunity from liability. *Trant*, 754 F.3d at 1172. "Although the [Supreme] Court [in *Lapides*] did not clarify the extent to which the removal of state law claims results in forfeiture of sovereign immunity, the presumption is that voluntary removal constitutes consent to have the claim heard in a federal forum." *Id*. In *Trant*, the Tenth Circuit held "that state law should determine the nature and scope of a state's immunity." *Id*. "'[U]nder *Lapides*'s reasoning, a state waives its immunity from a federal forum when it removes a case, which voluntarily invokes the jurisdiction of that federal forum. But nothing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court— including immunity from liability for particular claims.'" *Id*. at 11172–73 (quoting *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013).

The Commission, as an agency of the State, must be treated as an "arm of the state" for sovereign immunity purposes. *See Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). In *Garrett*, the Supreme Court held that Title I of the ADA did not abrogate state sovereign immunity from suit because, ". . . there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation. Those requirements are not

6

met here . . . ." *Garrett*, 531 U.S. at 374. Similarly, in *Kimel*, 528 U.S. at 91, the Court held that "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals". Furthermore, Oklahoma has not consented to suit or liability under the ADA or ADEA in its Government Tort Claims Act. *See* Okla. Stat. tit. 51, § 153. Consequently, Plaintiff's Claim One, Claim Two, and Claim Eight, to the extent Plaintiff relies on the ADA and the ADEA, are hereby DISMISSED.

### The Exhaustion Requirement of the OADA

The Commission next argues that Plaintiff has failed to comply with the exhaustion requirement of the OADA and therefore Claim Three should be dismissed. Doc. No 11 at 16–17. Defendant argues Plaintiff failed to file a charge of discrimination with the EEOC or the Oklahoma Attorney General's Office within 180 days of the last alleged discriminatory act. *Id*. Plaintiff disagrees, arguing that he filed an intake form with the EEOC on November 21, 2019, within the 180-day period, and therefore he has fulfilled the exhaustion requirements of the OADA.

The OADA states, in the relevant part,

> In order to have standing in a court of law to allege discrimination arising from an employment related matter . . . an aggrieved party must, within one hundred eighty (180) days from the last date of alleged discrimination, file a charge of discrimination in employment with the Attorney General's Office of Civil Rights Enforcement or the [EEOC].

Okla. Stat. tit. 25, § 1350(b). According to OWCC, the last discriminatory act—firing Plaintiff—took place on August 16, 2019, and Plaintiff did not file his statement of charges until March 9, 2020, 209 days later. Doc. No 11 at 16–17. Plaintiff counters that he filed his intake form on November 21, 2019, responded to all EEOC requests in a timely manner,

7

and should not be held responsible for how long it took the EEOC to issue his perfected charge. Doc. No. 16 at 18–20.  He further posits that his intake form meets the requisite legal requirements to be a charge. *Id.* at 14.

The Tenth Circuit has held "a document constitutes a[n EEOC] charge if it (i) provides the minimum information the regulations require, and (ii) can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee." *Semsroth v. City of Wichita*, 304 F. App'x 707, 713 (10th Cir. 2008) (quoting *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). It further found in *Semsroth* that "intake questionnaires reasonably constitute charges for the purposes of Title VII." *Semsroth*, 304 F. App'x at 714. Importantly to the *Semsroth* court, "[t]he presence of the Right-to-Sue letters suggests that Semsroth and Voyles in fact took the affirmative steps necessary to signal their desire to the EEOC to start its administrative process." *Id.*

Here, Plaintiff filed his intake form on November 21, 2019—approximately two months after his termination. His intake form itself states that "this questionnaire may serve as a charge if it meets the elements of the charge." Doc. No. 16-1 at 18. He then met all timely deadlines and was ultimately issued a Right-to-Sue letter and a perfected charge. Plaintiff has pled a plausible claim that his intake form is a charge and the Court DENIES OWCC's motion as to Claim Three.

## **FMLA Claim**

Citing *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012), Defendant OWCC argues it is immune from Plaintiff's FMLA retaliation claim.  Doc. No. 11 at 17–

19. Plaintiff counters that his claim is distinguishable from *Coleman* because he is asserting an FMLA retaliation claim, not an interference claim as was at issue in *Coleman*. Doc. No. 16 at 20–21. The Court concurs with the Commission that *Coleman* bars Plaintiff's FMLA claim.

The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave per year. 29 U.S.C. § 2601–2654. Under the FMLA, an employee may take leave for (A) the birth of a son or daughter . . . in order to care for such son or daughter; (B) the adoption or foster-care placement of a child with the employee; (C) the care of a spouse, son, daughter, or parent with a serious health condition; and (D) the employee's own serious health condition when the condition interferes with the employee's ability to perform at work. 29 U.S.C. § 2612(a)(1). Subsection (D) is referred to as the "self-care" provision, because the employee seeks leave to care for himself as opposed to another member of his family.

The Supreme Court in *Coleman* addressed whether Eleventh Amendment immunity applied in a subsection (D) interference claim. Because Congress failed to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations," the Court held Congress did not properly abrogate the states' Eleventh Amendment immunity as to subsection (D). *Id*. 566 U.S. at 43. The parties' disagreement here is whether that rationale extends to retaliation claims under the FMLA.

The Tenth Circuit has not addressed whether *Coleman* applies to retaliation claims under the self-care provision of the FMLA. In *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956 (6th Cir. 2013), the Sixth Circuit concluded there is no distinction between an

9

interference claim and a retaliation claim where, as here, a plaintiff seeks money damages. "[T]he Eleventh Amendment does not bar suits for equitable, prospective relief, such as reinstatement, against state officials in their official capacity," but "money damages under the self-care provision are barred by the doctrine of sovereign immunity." *Id.* at 961, 964 (citing *Coleman*, 566 U.S. at 33–34). The District of Kansas agreed with the Sixth Circuit's holding and dismissed a self-care FMLA retaliation claim finding that the "claim rests on subsection (D), but the Supreme Court has held that the States have Eleventh Amendment immunity against self-care claims based on subsection (D). The Court gave no indication that the type of FMLA claim—interference or retaliation—was significant regarding Eleventh Amendment immunity." *Humphrey v. Kansas Dep't of Wildlife*, No. 13-4025-JTM, 2013 WL 4857889, at *3 (D. Kan. Sept. 10, 2013). The Court concurs with the holdings of the Sixth Circuit and the District of Kansas and Plaintiff's FMLA claim against the Commission is hereby DISMISSED.

### *Burk* Claims

In his response brief addressing Defendant's FMLA argument Plaintiff raises a new legal theory, asserting that he may proceed against the Commission for retaliating against his right to medical leave as a public policy tort under *Burk v. K-Mart Corp.*, 770 P.2d 24, 26 (Okla. 1989) (*Burk* tort). In *Burk*, the Oklahoma Supreme Court explained "[a]n employer's termination of an at-will employee in contravention of a clear mandate of public policy is a tortious breach of contractual obligations." *Burk*, 770 P.2d at 28. Pursuant to *Burk*, if "an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling

public policy," he may sue despite his at-will status. *Wilburn v. Mid-S. Health Dev., Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003) (quoting *Burk*, 770 P.2d at 29). Plaintiff argues that because Oklahoma incorporated the FMLA into its statutes—Okla. Stat. tit. 74 § 840-2.22—and has not provided a remedy for violation thereof, he should be permitted to pursue a *Burk* tort. Doc. No. 16 at 20–21.

> To state a claim under *Burk*, Plaintiff must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

*Vasek v. Bd. of Cty. Comm'rs of Noble Cnty.*, 186 P.3d 928, 932 (Okla. 2008) (citing *McCrady v. Okla. Dept. of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005)). In its reply brief, OWCC did not address Plaintiff's *Burk* tort claim as it relates to his efforts to enforce the State's incorporation of the FMLA. Because Plaintiff's Second Amended Complaint incorporated by reference all preceding allegations, and the FMLA claim precedes Plaintiff's *Burk* tort claim in the Second Amended Complaint, the Court will allow the Plaintiff to PROCEED with a *Burk* tort against OWCC based on the incorporation of the FMLA into Oklahoma statute. *Rathbun v. Montoya*, 628 F. App'x 988, 992 (10th Cir. 2015) ("The court may consider an additional legal theory asserted in response to a motion to dismiss if it is 'consistent with the facts and theories advanced in the complaint.'") (citing *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001)).

OWCC next contends that Plaintiff's *Burk* tort as pled in Claim Six is subject to dismissal. Plaintiff alleges retaliation for speaking out about OWCC's misconduct in both his comments to supervisors and the State Legislature. The Commission argues that claim is subject to dismissal because Plaintiff has a sufficient statutory remedy under the Oklahoma Whistleblower Act. Okla. Stat. tit. 74 § 840-2.5; Doc. No. 11 at 19. Plaintiff counters that the Whistleblower Act covers only "[r]eporting a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health . . . ." [Okla. Stat. tit. 74 § 840-2.5(B)(2)], and that he was not reporting such a violation to OWCC administrators or the State Legislature when OWCC retaliated against him. Doc. No. 16 at 24. Rather, he argues that he was reporting fraud, misrepresentation, and failure to adequately complete the task at hand. *Id.*

"The [Oklahoma] Legislature has determined that this state's sovereign interest is better served by the remedies and penalties in the Whistleblower Act than by a suit in court." *Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, No. CIV-14-1438-C, 2015 WL 1955377, at *2 (W.D. Okla. Apr. 29, 2015), *aff'd*, 683 F. App'x 691 (10th Cir. 2017). Accordingly, "a *Burk* tort claim is not cognizable for claims that would be covered by the Whistleblower Act." *Poff*, 683 F. App'x 691, 695 (10th Cir. 2017) (citing *Shephard v. CompSource Okla.*, 209 P.3d 288, 292–93 (Okla. 2009)). Thus, the issue before the Court is whether the Whistleblower Act covers the conduct Plaintiff describes in his Second Amended Complaint.

12

When a plaintiff's allegations "fall squarely within the [text of] the Whistleblower Act," an adequate remedy exists to preclude a *Burk* tort. *Poff*, 683 F. App'x at 695 (holding that internal reporting regarding a state agency's failure to enforce public policy was conduct covered by the Whistleblower Act). "The purpose of the Whistleblower Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities." Okla. Stat. tit. 74 § 840-2.5(A). When explaining the type of conduct it covers, the Whistleblower Act provides:

> [n]o officer or employee of any state agency shall prohibit or take disciplinary action against employees of such agency . . . for:
>
> . . .
>
> 2. Reporting a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety;
>
> 3. Discussing the operations and functions of the agency . . . with . . . persons in a position to investigate or initiate corrective action

Okla. Stat. tit. 74 § 840-2.5(B). The Whistleblower Act does not, however, protect "general discussions . . . which do not report wrongful governmental activities ...". *See Burgess v. State ex rel. Oklahoma Dep't of Envtl. Quality*, 438 P.3d 829, 834 ¶ 16 (Okla. Civ. App. 2019) (explaining that the "plain, clear, unmistakable, unambiguous, and unequivocal language of § 840-2.5 clearly provides that the stated purpose of the Act is to encourage and protect the reporting of *wrongful* governmental activities . . .") (emphasis in original).

Plaintiff's actions fall squarely in the text of Whistleblower Act. He pointed out OWCC's unwillingness to enforce failure to obtain workers' compensation insurance

13

cease-and-desist orders against employers to the Commission's administrators and attorneys. Doc. No. 5, ¶ 24. When his internal reporting failed to impact OWCC's operations, Plaintiff next went to a lobbyist and then directly to the State Legislature, presenting them with the alleged enforcement failures and budgetary discrepancies he identified. *Id.* ¶¶ 25–27, 31–33. The information Plaintiff reported was "wrongful governmental activities" as well as "mismanagement; a gross waste of public funds; an abuse of authority." Okla. Stat. tit. 74 § 840-2.5(B). Further, Plaintiff claims that his demotion and termination were as a direct result of his actions speaking up against the alleged misconduct. Doc. No. 5 at ¶¶ 125–128. Providing information to both supervisors and the State Legislature of wrongful governmental activity is conduct covered by the Whistleblower Act. Therefore, Plaintiff's free speech *Burk* claim is DISMISSED.

## § 1983 First Amendment Claim

Defendants Smith, Delling and Liotta move to dismiss Claim Seven—Plaintiff's 42 U.S.C. § 1983 First Amendment retaliation claim. Doc. No. 11 at 20–21. They first argue the claim is not plausible because Defendants demoted Plaintiff before he began talking to the State Legislature. *Id*. The individual Defendants further argue that when Plaintiff was demoted and terminated, he was not speaking out on a matter of public concern as required for protection under the First Amendment. *Id*.

To determine if a government employer violated the First Amendment by terminating an employee the Court applies the *Garcetti/Pickering* test. *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). This test requires the Court to consider the five elements:

> (1) whether the speech was made pursuant to an employee's official duties;
> (2) whether the speech was on a matter of public concern;
> (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
> (4) whether the protected speech was a motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (modified). Elements one through three are issues of law for the Court to decide, while four and five are factual issues. *Id.*

The timeline set forth in the Second Amended Complaint supports Defendant's contention that Plaintiff had not yet made any potentially protected statements at the time Defendants demoted him. However, Plaintiff's demotion is not the only retaliation he claims. He also relies on his termination, which occurred after the allegedly protected speech. Therefore, the fact that Defendants demoted Plaintiff before he spoke with State legislators is not dispositive.

As noted, Defendants further argue that Plaintiff was not speaking on a matter of public concern. "Speech is a matter of public concern if it is of 'interest to the community,' and we 'focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'" *Trant,* 754 F.3d at 1155 (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000)). "Statements revealing official impropriety usually involve matters of public concern." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1205. Defendants claim that Plaintiff's speech was mostly motivated by his demotion. While

15

ultimately Defendants' theory may prove true, Plaintiff's Second Amended Complaint sufficiently pleads that he spoke out about alleged governmental misconduct—namely failure to act on cease-and-desist orders and budgetary discrepancies. These are issues the Tenth Circuit sees as involving matters of public concern. *Id.* Therefore, the Court DENIES the motion as to Plaintiff's 42 U.S.C. § 1983 claim against the individual Defendants.

### OADA Age Discrimination Claim

OWCC next argues Plaintiff's OADA age discrimination claim, Claim Eight, must be dismissed because Plaintiff fails to plead that his age was the but-for cause of his termination. Doc. No. 11 at 22–23. Plaintiff's age discrimination claim under the OADA is analyzed in the same way as an ADEA claim. *See Taber v. City of Sand Springs*, Okla., No. 12-cv-0666-CVE-TLW, 2014 WL 241697, at *7 (N.D. Okla. Jan. 22, 2014) ("When a plaintiff fails to establish a *prima facie* claim under the ADEA, he fails to establish a claim of age discrimination under the OADA.") (citation omitted). The ADEA prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Although it is not necessary for a plaintiff to allege a *prima facie* case of age discrimination, the elements of a *prima facie* case present a useful starting point. Accordingly, the Court queries whether Plaintiff has alleged that he is a member of a protected class, that he suffered an adverse employment action, and that the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).

In *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177–78 (2009), the Supreme Court held that a claim under the ADEA requires "but-for" causation. The Tenth Circuit has followed that a plaintiff needs to prove but-for causation for an employer to be liable under the ADEA, but it has not held that a plaintiff needs to "show that age [is] the sole motivating factor in the employment decision." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Instead, the Circuit found that "an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Id*. (internal quotation marks and citation omitted) Plaintiff has pled that he is 56 years old, making him a member of a protected class [Doc. 5, ¶ 168], that OWCC replaced him with a younger employee who had no experience in his field [*id.* ¶ 169], and that OWCC never complained about his performance before his demotion and termination. *Id.* ¶¶ 170. At this juncture, Plaintiff has pled sufficient facts that make it plausible OWCC used age as "the factor that made a difference" when it decided to fire him. *Jones*, 617 F.3d at 1277; *see Berry v. Airxcel, Inc.*, No. CV 20-1362-KHV, 2021 WL 4263489, at *5 (D. Kan. Sept. 20, 2021). Accordingly, the Commission's motion is DENIED as to Plaintiff's age discrimination claim under the OADA.

OWCC additionally argues that Plaintiff seeks relief not authorized by the OADA, namely non-economic damages. Doc. No. 11 at 24–25. Plaintiff does not dispute Defendant's interpretation of the law. Doc. No. 16 at 29–30. He argues instead that his plea was for general relief, and the Court need not dismiss his claim under the OADA because of his request for improper relief. *Id*. The Court agrees with Plaintiff, however, clarifies

17

that he is entitled only to authorized damages, namely enjoining OWCC, reinstatement, and liquidated damages, under the OADA.[2]

## Claims against Defendant Smith

Finally, Defendant Smith argues that the claims against him—FMLA and 42 U.S.C. § 1983—should be dismissed because Plaintiff has failed to sufficiently allege "what it was Smith allegedly did or did not do in relation to any adverse action taken against Plaintiff." Doc. No. 11 at 25. Plaintiff argues that he has sufficiently complied with the notice requirements of Rule 8 by pleading that Defendant Smith was the Executive Director of OWCC and that he served as interim Compliance Director, as well as arguing that Mr. Smith was informed of Mr. Andrews' dissatisfaction with being demoted. Plaintiff complains that Smith ignored certain correspondence, and he has alleged that Smith was involved in either making or carrying out the termination. Plaintiff is correct that he references Smith's title within OWCC, however, he does not make any non-conclusory allegations that tie Defendant Smith to his termination. Although Smith did not respond to the letter counsel sent on April 22, 2019, Plaintiff pleads that he received his twelve weeks of FMLA leave as requested in the letter. Defendant Delling, in her capacity as human resources officer also addressed Plaintiff's grievance regarding his demotion. Smith's position as executive director and interim compliance director provide no basis for holding him responsible absent sufficient allegations of personal participation in the alleged

---

[2] The OADA, in the relevant part, states, [T]he court may enjoin the defendant or defendants from engaging in [an] unlawful employment practice . . . order such affirmative action as reinstatement or hiring of employees . . . [and order] backpay and an additional amount as liquidated damages . . . . Okla. Stat. tit. 25 § 1350(G).

wrongdoing. Because Plaintiff's allegations against Defendant Smith are conclusory, the motion as to him is GRANTED.

Finally, the Court addresses Plaintiff's request to amend his Complaint contained within the motion. A response to a Motion to Dismiss is not the proper filing to request amendment to a Second Amended Complaint. If Plaintiff desires to amend, he may do so by complying with Local Civil Rule 15.1. The Court will not grant leave based on a request in a response to a motion to dismiss.

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's ADA (Claims One and Two), ADEA (Claim Eight federal claim), FMLA (Claim Four), *Burk* whistleblower claims (Claim Six) against the Commission are DISMISSED. Plaintiff's claims against Defendant Smith (Claims Four and Seven) are DISMISSED. The Motion is DENIED as to Plaintiff's FMLA *Burk* tort against the Commission, § 1983 First Amendment (Claim Seven) claims against Defendants Liotta and Delling, and his OADA claims (Claims Three and state claims in Eight).

**IT IS SO ORDERED** on this 7th day of October 2021.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE